IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GREG ROYBAL,

        Plaintiff,

v.                                         No. CIV. 02-395 LH/RHS

DR. PENN,

        Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

     Plaintiff, Greg Roybal, an incarcerated pro se litigant proceeding in forma pauperis, alleges that prison officials acted with deliberate indifference to a serious medical condition and that such action constituted cruel and unusual punishment in violation of the Eighth Amendment. Mr. Roybal contends that he was infected with the Hepatitis B and C viruses due to the failure of the prison system to keep IV drug and tattoo paraphernalia away from prisoners and that once he acquired the viruses, he was deprived of proper medical treatment for his condition. His Complaint seeks injunctive relief as well as compensatory and punitive damages pursuant to 42 U. S. C. § 1983.

     Memorandum Opinions and Orders dismissing Plaintiff's claims against Defendants Perry and Sedillo.[Doc. No. 5], Defendants LeMaster, Mares and Ulibarri [Doc. No. 8] and Defendant Fire [Doc. No. 28] have previously been entered in this case. On August 26, 2003, this Court

directed the remaining defendant, Dr. Sandra Penn, to submit a <u>Martinez</u> Report addressing the following matters:

    1. All impatient and outpatient treatment records for Plaintiff, including all sick call requests and sick call visits;

    2. Copy of the procedure by which inmates at the correctional facility may request medical care;

    3. Names of all medical and health care personnel or staff at the correctional facility who provided care to Plaintiff, including any reports or treatment notes generated therefrom;

    4. Copies of any written grievances or complaints received from Plaintiff regarding medical treatment received;

    5. Copies of any guidelines or protocols used at the correctional facility which govern the evaluation and treatment of hepatitis C.

    [Doc. No. 30].

The parties were notified that the <u>Martinez</u> report could be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by Motion or *sua sponte*, and that whatever materials they considered to be relevant to Plaintiff's claims should be submitted to the Court.  See <u>Hall v. Bellmon</u>, 935 F. 2d 1106 (10th Cir.1991). <u>Id.</u>

Defendant initially submitted a <u>Martinez</u> report which included documentation of the medical care provided to Plaintiff before July 1, 2002. [Doc. No. 32, Exh. A].  Dr. Penn also included an expert's affidavit which concluded that at the time Plaintiff was diagnosed with Hepatitis C, the standard of care for medically indigent <u>individuals</u> in the care of the DOC did not include drug therapy as treatment for Hepatitis C.  [Doc. 32, Exh. D].

The Court instructed Dr. Penn to supplement her <u>Martinez</u> report with more current information including all treatment records, written grievances and other documents generated after June 30, 2002, including any protocols for treatment of Hepatitis C currently used by the New Mexico Department of Corrections.[Doc. No. 36].  Defendant's Supplemental Martinez Report was filed October 4, 2004.  [Doc. No. 41].

The record reflects that Plaintiff underwent a medical intake screening process when he was transferred from the Central New Mexico Correctional Facility to the Penitentiary of New Mexico North Facility in April, 2001. At that time Plaintiff's laboratory tests were negative for hepatitis. [Doc. No 32, Exh. A].

A blood sample drawn on June 26, 2001 showed serological evidence of infection with both the Hepatitis B and C viruses. The Medical Encounter Record generated on June 29, 2001, reflects that Plaintiff complained of fatigue and nausea on that date.  The physician's assistant who saw Plaintiff noted that Plaintiff's sclera were yellow and he concluded that Plaintiff was suffering from acute hepatitis.  Ibuprofen and Tums were prescribed for his discomfort.  <u>Id.</u>

In July 2001, the Medical Encounter Record states that the physician's assistant "reviewed lab results", "discussed Hepatitis B and C extensively" and answered "all questions." In September 2001, a Medical Encounter Record states that Roybal complained of intermittent indigestion and was prescribed calcium carbonate when needed for his discomfort.  The file reflects no other medical complaints until November 23, 2001 when Roybal stated  "I got this off the WEB.  I want to be treated for my hepatitis."  The Department of Corrections had no drug treatment protocol for Hepatitis C at that time, however, laboratory testing and information relating to the virus was provided for Plaintiff.  A June 2, 2002 Medical Encounter Record of an

appointment with Dr. Penn noted that Plaintiff's liver function had returned to normal at that time. Id.

Plaintiff was diagnosed with an ingrown toenail on February 11, 2003, underwent toenail debridements on February 18, 2003 and July 3, 2003. He was seen by medical personnel for allergies on October 1, 2003 and October 3, 2003, for a rash from his deodorant on December 9, 2002 and on February 11, 2003, for a contusion to his knee on April 25, 2003 and for an ear infection on January 29, 2004. He was prescribed Tums or Rolaids for heartburn on January 3, February 9, June 30, July 12, August 31, September 4 and December 12, 2003.

On June 25, 2003, the Department of Correction issued its Hepatitis C Program Policy and Procedure. Supplemental Martinez Report, Exhibit H. That protocol provides that inmates who have positive hepatitis test results be monitored in the HCV Chronic Care Clinic, that they receive regular blood tests, and that they be evaluated by the psychiatry service and Addiction Services prior to possible enrollment in Phase II (combination drug therapy). Id.

Plaintiff's medical records include a Hepatitis C treatment Contract, a hepatitis protocol checklist, several medical encounters in which HCV was discussed with Plaintiff, and results of laboratory tests performed to determine the extent of the HCV and its effects on liver function from 2002, 2003 and 2004. Dr. Penn filed an affidavit stating that she personally evaluated Plaintiff's laboratory results and found that he was not eligible for HCV treatment according to the New Mexico Department of Corrections protocol. Supplemental Martinez Report, Exhibit F.

Plaintiff's § 1983 claim alleges that his medical care amounted to cruel and unusual punishment. To state a viable claim under 42 U.S.C. § 1983, defendant must have acted under color of state law, and defendant's actions must deprive plaintiff of some right, privilege or immunity protected by the Constitution or the law of the United States. Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992). Defendant does not dispute Plaintiff's contention that during the period in question she was acting under color of law.

Deliberate indifference by prison officials to a prisoner's serious medical need is "cruel and unusual punishment" and violates the Eighth Amendment. Brown v. Zavaras, 63 F.3d 967, 969 (10th Cir. 1995). The essential question, then, is whether Plaintiff has presented "sufficient facts that would allow a reasonable fact finder to conclude that he had a serious medical need *and* that the defendant [was] deliberately indifferent to that need." Clemmons v. Bohannon, 956 F.2d 1523, 1526 (10th Cir. 1992) (emphasis in original).

A careful examination of Plaintiff's medical records fails to disclose that Dr. Penn's actions rose to the level of deliberate indifference. Plaintiff was provided with testing and education about his HCV condition and treatment for a variety of other medical complaints. Dr. Penn's affidavit explains that, after evaluating the medical data, it was her professional judgment that Plaintiff was not eligible for Phase II treatment. The Court has no evidence that Dr. Penn's decision on that matter was not made in good faith.

Although Plaintiff may disagree with the medical treatment he has been provided while incarcerated, the two Martinez reports indicate that Plaintiff's concerns have not been treated with deliberate indifference. As the Hepatitis C Program Policy and Procedure notes, significant side effects from combination drug therapy for HCV are common, including influenza type

-5-

symptoms, neuropsychiatric symptoms including depression and anxiety and cytopenias. Liver biopsy is often recommended. Some patients do not respond to the drug therapy and the treatment is medically contraindicated for others. The determination that Plaintiff was not an appropriate candidate for Phase II treatment was reached after Defendant's analysis of Plaintiff's blood tests and other pertinent medical evidence. That decision does not constitute deliberate indifference to Plaintiff's serious medical condition.

### RECOMMENDED DISPOSITION

The United States Magistrate Judge recommends that summary judgment be GRANTED in favor of Defendant and that this case be DISMISSED WITH PREJUDICE.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_Robert Hayes Scott_
**ROBERT HAYES SCOTT**
**UNITED STATES MAGISTRATE JUDGE**